UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MW (Minor Child), HAJA SILLAH, DEMBO WAGGEH,<br><br>Plaintiffs,<br><br>v.<br><br>SAFEWAY, INC.,<br><br>Defendant. | CASE NO. 2:18-cv-01404-RAJ-BAT<br><br>**ORDER DIRECTING PARTIES TO OBTAIN INDEPENDENT COUNSEL FOR SETTLEMENT** |

Before the Court is the Stipulated Motion for Approval of Minor Settlement. Dkt. 49. The parties, Plaintiffs Haja Sillah, Dembo Waggeh and their minor son, MW, and Defendant Safeway Inc., jointly request an order approving settlement of Plaintiffs' claims and making several findings, including *inter alia*, that the minor MW is represented by independent counsel and it is appropriate to dispense with the appointment of a settlement guardian ad litem ("GAL"). Dkt. 49.

The parties stipulated to the referral of the motion for approval of minor settlement to a United States Magistrate Judge. Dkt. 48. This matter was assigned to the undersigned for that purpose on July 24, 2019. The undersigned **DECLINES** to recommend to the assigned District Judge that it be found the minor MW is represented by independent counsel or that it is appropriate to dispense with the appointment of a GAL or independent counsel as set forth in LCR 17. The undersigned **RESERVES** submission of a report and recommendation on the

ORDER DIRECTING PARTIES TO OBTAIN
INDEPENDENT COUNSEL FOR
SETTLEMENT - 1

reasonableness of the proposed settlement pending submission of a report from independent counsel investigating the adequacy of the settlement.

## STIPULATED FACTS

In March 2015, when MW was three years old, he was with his mother in the parking lot of the Rainier Valley Safeway when an employee, who was pushing multiple shopping carts, "negligently caused shopping carts to strike MW." Dkt. 8-3, ¶ 7. Plaintiffs claimed personal injuries to MW and loss of parental consortium damages. Defendant denied these assertions. Plaintiff MW and his parents sued defendant in King County Superior Court and Defendant removed the case to this Court on the basis of diversity. Dkt. 8-1 (Redacted Amended Complaint); Dkt. 8 (Redacted Notice of Removal).

Plaintiffs' claim that the alleged injury, which consisted of one or two blows to MW's head from one or two shopping carts, resulted in the primary complaint that MW suffered headaches. However, medical evidence linking the blow or blows to headaches or any other condition was debatable due to other potential medical causes. After reviewing photos of the shopping cart, school and medical records, and the depositions of MW's mother and father, defense expert Lauren L. Plawner, M.D., Board Certified Neurologist, concluded the medical evidence did not support a probable medical causal relation between the alleged blows and the headaches or other conditions. Dkt. 49, Exhibit 1 ("The Plawner Report"). Dr. Plawner identified the primary alternate cause of MW's headaches as his diagnosis of sagittal craniosynostosis. This is premature fusion of the sagittal suture that runs from the front to the back at the top of the skull, which forces the head to grow long and narrow, can increase pressure to the brain, and can cause headaches.

Attorney Luhr also reviewed the medical evidence, depositions, and the Plawner Report. MW's medical record indicates that his doctors share the working hypothesis that craniosynostosis was the probable cause of MW's headaches. None of MW's physicians opined that the shopping cart blow caused headaches beyond the immediate time of the incident. Dkt. 50, Luhrs Decl., ¶ 5; and Dkt. 49, Exhibit 8 (2/3/17 clinic note from Seattle Children's Hospital in which MW's doctor links pressure from craniosynostosis as the likely cause of MW's headaches). A July 26, 2015 CT Scan of MW was also negative for brain injury, but showed maxillary and ethmoid sinusitis, which provides yet another medical explanation for MW's headaches, since both types of sinusitis are associated with headaches. Dkt. 50, Luhrs Decl., ¶ 6 (and websites cited therein).

Attorney Luhrs determined that a substantial investment would be required to secure supporting medical testimony, and that such an investment would not necessarily produce a convincing response to Dr. Plawner's opinion. Dkt. 50, Luhrs Decl., ¶ 7. Based on Attorney Luhrs' evaluation, Plaintiffs opted to settle for what amounted to a nuisance amount of $12,000.00. *Id.*, ¶ 8. Dkt. 51, Declaration of Haja Sillah, ¶ 3; Dkt. 49, Exhibit 2 (Settlement Agreement).

Haja Sillah is authorized to speak for her husband Dembo Waggeh, who is currently working on a fishing boat in Alaska, and for M.W., who is now seven years old. Dkt. 51, Sillah Decl., ¶ 2. Ms. Sillah cannot read English but understands English if the person speaking takes the time to explain, something she says Attorney Luhrs did when he read the settlement agreement to her and answered her questions. *Id*. The referenced exhibits were read to her in English and in Soninke when needed, by Souleymane Camara, who also explained anything she did not understand. *Id.*, ¶ 8.

Attorney Luhrs also explained to Ms. Sillah and Dembo Waggeh that the appointment of a settlement GAL would likely incur a cost of $2,000.00 or more, which would leave very little to distribute after payment of fees and costs and the subrogation amount. Thus, if she and her husband agreed to relinquish their loss of consortium claims (so that Attorney Luhrs represented only the interests of MW going forward), this might convince the judge to dispense with the appointment of a GAL. Dkt. 51, ¶ 6. Ms. Sillah and Mr. Waggeh agreed to relinquish their claims and also consented to all funds after fees and costs and the Molina payment being placed into a blocked account for MW. They agreed to do this because "this case was always for MW and also because Safeway counsel indicated Safeway placed no value" on their claims. *Id*. Dkt. 51, Sillah Decl., ¶ 6. Ms. Sillah is also aware that while they could petition the Court to withdraw funds for an urgent necessity for MW, such a request would rarely be granted. *Id*.

Attorney Luhr's representation of Plaintiffs has been under a contingent fee agreement providing for a fee of 1/3 of recovery and reimbursement of his litigation expenses. See Dkt. 49, Exhibit 3 (Fee Agreement). While not spelled out, counsel takes a fee from Plaintiffs only on any recovery to Plaintiffs, not on recovery to subrogated interests. Dkt. 50, Luhrs Decl., ¶ 10. Attorney Luhrs' 1/3 fee is on the gross recovery minus the payment to subrogated interests, after which expenses are reimbursed. Molina Health Care of WA has a subrogation claim of $667.58 for medical expenses paid for the treatment of MW. Attorney Luhrs negotiated a settlement of that claim for $296 net after deduction of fees and costs. Dkt. 50, Luhrs Decl., ¶ 13; Dkt. 49 (Equian letters of 7/11/19 (with bill) and 7/19/19).

**DISCUSSION**

The parties contend it is appropriate for the Court to dispense with the appointment of a settlement GAL or independent counsel because now that MW's parents have relinquished their

loss of consortium claims, Attorney Luhr is now MW's independent counsel.

Local Rule 17(c) provides that "[i]n every case where the court is requested to approve a settlement involving the claim of a minor or incompetent, an independent guardian ad litem, who shall be an attorney-at-law, *must* be appointed by the court," to "investigate the adequacy of the offered settlement and report thereon." Rule 17(c) further provides "that *the court may dispense with the appointment of the guardian ad litem if ... the court affirmatively finds that the minor or incompetent is represented by independent counsel.*" *Id*. (emphasis added).

"The role of the guardian ad litem is to protect the incompetent person's rights in the action, to control the litigation, to compromise or settle, to direct the procedural steps, and make stipulations." *Golin v. Allenby*, 190 Cal. App. 4th 616, 644, 118 Cal.Rptr.3d 762 (Cal. Ct. App. 2010). As a general matter, the decision whether to appoint a guardian ad litem is "normally left to the sound discretion of the trial court." *United States v. 30.64 Acres of Land*, 795 F.2d 796, 804 (9th Cir. 1986). However, Fed.R.Civ.P. 17(c) requires a court to take whatever measures it deems proper to protect an infant or incompetent person during litigation. And, although the court has broad discretion and need not appoint a GAL if it determines the person is or can be otherwise adequately protected, it is under a legal obligation to consider whether the person is adequately protected. *See Roberts v. Ohio Casualty Insurance Co.*, 256 F.2d 35, 39 (5th Cir.1958).

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs, this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.'" *Id*. (quoting *Dacanay v. Mendoza*, 573 F.2d

1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) ("a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem").

The Ninth Circuit in *Robidoux* provided guidance to a district court considering whether to approve a proposed settlement of federal claims involving minors – this includes considering whether the settlement is fair and reasonable in light of the facts and specific claims at issue and recoveries in similar cases, but without regard to the fee the adult plaintiffs agreed to pay plaintiff's counsel. Id. at 1181-82. The *Robidoux* court, however, expressly limited its ruling to a district court's evaluation of a settlement involving a minor's federal claims. *Id*. at 1179 n.2 ("Our holding is limited to cases involving the settlement of a minor's federal claims.").

As Defendant removed this case from state court based on the court's diversity jurisdiction and Plaintiffs allege only state law claims for personal injuries based on negligence and breach of duty of care, there are no federal claims before the Court. Dkt. 8; Dkt. 8-3, pp. 1-4. Thus, in this instance, the Court "will continue to follow the typical practice of district courts in this Circuit and apply [state] law when evaluating the [settlement agreement]." *See Primerica Life Ins. Co. v. Cassie*, No. CIV. 2:12-1570 WBS GGH, 2013 WL 1705033, at *1 (E.D. Cal. Apr. 19, 2013) (citing *Robidoux*, 638 F.3d at 1181 ("In the district courts in the Circuit, the typical practice has been to apply state law and local rules governing the award of attorney's fees . . . .")).

"Under Washington law[,] parents may not settle or release a child's claim without prior court approval." *Scott v. Pac. W. Mountain Resort*, 834 P.2d 6, 11 (Wash. 1992); *see also Tinket v. Kent Gypsum Supply, Inc.*, 977 P.2d 627, 628, n. 1 (Wash. Ct. App. 1999) ("Court approval is

necessary when settlements involve minors.'); *Kommavongsa v. Haskell*, 67 P.3d 1068, 1084 (Wash. 2003) (Ireland, J., dissenting) (citing Superior Court Special Proceedings Rule ("SPR") 98.16W). "[T]he court shall determine the adequacy of the proposed settlement on behalf of [an unemancipated minor] and reject or approve it." SPR 98.16W(a). The GAL is appointed "to assist the court in determining the adequacy of the proposed settlement," and "shall conduct an investigation and file a written report with the court recommending approval and final disposition . . . ." SPR 98.16W(c). The GAL's report shall be "in depth appropriate to the magnitude of injuries and settlement." SPR 98.16W(e). In addition to approving the amount of the settlement apportioned to the minor plaintiff, the court also considers "the allowance and taxation of all fees, costs, and other charges incident to the settlement." SPR 98.16W(f); *see also In re Settlement/Guardianship of AGM*, 223 P.3d 1276, 1283 (Wash Ct. App. 2010) ("SPR 98.16W authorizes attorney fees for settlements on behalf of a minor and contemplates the superior court's exercise of discretion over these fees."). The GAL is required to include "a discussion regarding expenses and fees for which payment is requested" in his or her report. SPR 98.16W(e)(12).

In addition to the GAL's report, "[a]ny attorney claiming fees, costs or other charges incident to representation of [a minor] from the claim proceeds or otherwise, shall file an affidavit or declaration . . . in support thereof." SPR 98.16W(g); *see also In re Settlement/ Guardianship of AGM*, 223 P.3d at 1283 ("[SPR 98.16W(g)] . . . contemplates that in determining a reasonable fee amount for representing a minor, the superior court will consider both the minor's attorney's submissions and the [GAL's] recommendations."). "Copies of any written fee agreement must be attached to the [attorney's] affidavit or declaration." SPR 98.16W(g).

ORDER DIRECTING PARTIES TO OBTAIN
INDEPENDENT COUNSEL FOR
SETTLEMENT - 7

The Court disagrees that Attorney Luhr is "independent" as that term is used in Local Rule 17(c) merely because MW's parents have relinquished their consortium claims. Attorney Luhr has represented all three parties since the onset of this case and, while Attorney Luhr and MW's parents have satisfied themselves that the settlement is fair and reasonable, Plaintiff's counsel cannot broker a deal to the parents' satisfaction and then claim that he is independent counsel to MW. In addition, under Washington law, it is anticipated that an appointed GAL will investigate and provide the Court with a report that is "in depth appropriate to the magnitude of injuries and settlement." *See* Superior Court Special Proceedings Rule ("SPR") 98.16W(c); SPR 98.16W(e). An independent GAL or counsel may take a different view on the size of the settlement.

## CONCLUSION

Accordingly, the Court **DECLINES** to find that MW is currently represented by independent counsel or that it is appropriate to dispense with the appointment of a GAL or independent counsel as required by LCR 17. The Court **RESERVES** submission of a report and recommendation on the remainder of the parties' stipulated motion (Dkt. 49) until independent counsel is obtained, has conducted an investigation, and submitted a report to the Court.

The parties are therefore **DIRECTED** to obtain independent counsel to perform the duties set forth under LCR 17. Because MW is quite young and likely lacks the financial resources to hire independent counsel, the Court will entertain a motion from Plaintiffs requesting the appointment of independent counsel from the Court's pro bono panel.

DATED this 26th day of July, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge