UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

M.W. (Minor Child), HAJA SILLAH,
DEMBO WAGGEH,

                          Plaintiffs,

     v.

SAFEWAY, INC.,

                          Defendant.

CASE NO. 2:18-cv-01404-BAT

**ORDER APPROVING MINOR
SETTLEMENT**

Before the Court is the Supplemental Stipulated Motion for Approval of Minor

Settlement of Plaintiffs Haja Sillah, Dembo Waggeh and minor son, M.W., and Defendant

Safeway, Inc. Dkt. 60. The motion is based on the parties' prior Stipulated Motion with attached

exhibits (Dkt. 49), supporting declarations (Dkts. 50 and 51), and the Independent Counsel's

Report on Adequacy of the Minor Settlement (Dkt. 59). The parties stipulated to the assignment

of this motion for approval of the minor settlement to a United States Magistrate Judge. Dkt. 48.

This matter was assigned to the undersigned for that purpose on July 24, 2019.

The undersigned deferred ruling on the reasonableness of the parties' proposed settlement

pending appointment of independent counsel pursuant to LCR 17. Dkt. 52. On July 31, 2019,

Attorney Justo Gonzalez of Stokes Lawrence, P.S. was appointed as pro bono counsel for M.W.

pursuant to LCR 17(c) to investigate the adequacy of the settlement under Washington state law

and provide the Court with a report prepared pursuant to Washington Superior Court Special

Proceedings Rule ("SPR") 98.16W(e). Dkt. 56. On August 1, 2019, Mr. Gonzalez and his colleague, Amy Alexander, (hereinafter "Independent Counsel") entered a notice of appearance on behalf of M.W. Dkt. 57. On September 16, 2019, they filed a report recommending approval of the settlement stipulated to by the parties. Dkt. 59. As pro bono counsel, they have not requested fees or costs. *Id.*, ¶ 14.

Based on the parties' stipulated facts, the report of Independent Counsel, and remaining record, the Court concludes the proposed minor settlement is reasonable and in the best interests of M.W.

## DISCUSSION

A.  Court's Duty to Safeguard Interests of Minors

"District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c), to safeguard the interests of litigants who are minors." This duty includes conducting "its own inquiry to determine whether the settlement serves the best interests of the minor." *Robidoux v. Rosengren*, 638 F.3d 1177, 1181 (9th Cir. 2011) (quoting *Dacanay v. Mendoza*, 573 F.2d 1075, 1080 (9th Cir. 1978)); *see also Salmeron v. United States*, 724 F.2d 1357, 1363 (9th Cir. 1983) ("a court must independently investigate and evaluate any compromise or settlement of a minor's claims to assure itself that the minor's interests are protected, even if the settlement has been recommended or negotiated by the minor's parent or guardian ad litem"). When considering whether to approve a proposed settlement of federal claims involving minors, the Court must consider whether the settlement is fair and reasonable in light of the facts and specific claims at issue and recoveries in similar cases, but without regard to the fee the adult plaintiffs agreed to pay plaintiff's counsel. *Id.* at 1181-82. However, where only state claims are involved, the typical practice of district courts in this Circuit is to apply state law when evaluating the

proposed settlement. *Robidoux*, 638 F.3d at 1181 ("In the district courts in the Circuit, the typical practice has been to apply state law and local rules governing the award of attorney's fees . . . .").

Defendants removed this case from state court based on the Court's diversity jurisdiction and Plaintiffs allege only state law claims for personal injuries based on negligence and breach of duty of care. Dkt. 8; Dkt. 8-3, pp. 1-4. As there are no federal claims before the Court, the Court looks to Washington state law to determine the fairness of the proposed settlement. "Under Washington law[,] parents may not settle or release a child's claim without prior court approval." *Scott v. Pac. W. Mountain Resort*, 834 P.2d 6, 11 (Wash. 1992); SPR 98.16W(a) ("[T]he court shall determine the adequacy of the proposed settlement on behalf of [an unemancipated minor] and reject or approve it." Washington law also provides for the appointment of a settlement guardian ad litem to assist the court in determining the adequacy of the proposed settlement," and to "conduct an investigation and file a written report with the court recommending approval and final disposition . . . ." SPR 98.16W(c). The settlement guardian ad litem's report shall be "in depth appropriate to the magnitude of injuries and settlement" and shall include a discussion regarding expenses and fees for which payment is requested." SPR 98.16W(e)(12).

After reviewing discovery and medical records, interviewing M.W.'s mother, and researching comparable damages awards, Independent Counsel recommends approval of the proposed settlement form, documents, and amounts. The recommendation is based on their analysis of the potential liability of all persons and entities, the medical records reflecting the difficulty of proving causality, medical expenses incurred, and settlement amounts in cases with similar evidence and damages. Dkt. 59. Based on the stipulated facts and the report of

Independent Counsel as outlined below, the Court agrees that the proposed settlement is reasonable and in the best interests of the minor child, M.W.

B.    The Proposed Settlement

Plaintiffs agree to release all claims against Safeway arising out of their Complaint in exchange for $12,000, an amount which includes payment of attorney fees and costs and subrogation to the insurer. Dkt. 49-2. The proposed distribution is as follows: $296 to Equian/Molina in subrogation, $6,679.23 to Plaintiffs' counsel George Luhrs for fees and costs, and the remainder, $5,024.77 in trust to M.W. Dkt. 49-6. Independent Counsel confirms that the distributions to Mr. Luhrs and Equian are supported by appropriate documentation and each distribution appears reasonable in amount. Dkt. 49-4 (letters and statements from Equian and Molina); Dkt 49-5 (itemized costs); Dkt 49-3 (contingent fee agreement). The remaining amount, $5,024.77, will be distributed to a blocked account for M.W., payable to M.W. after he turns 18 years old. Dkt. 51, p. 4. M.W.'s parents released their claims for damages. Dkt. 51, p. 4.

C.    Stipulated Facts and Report of Independent Counsel

In March 2015, when M.W. was three years old, he was with his mother in the parking lot of the Rainier Valley Safeway when an employee, who was pushing multiple shopping carts, "negligently caused shopping carts to strike M.W." Dkt. 8-3, ¶ 7. At the time, M.W.'s mother was loading groceries in the car, and her five children were nearby. Dkt. 59, ¶ 3. Plaintiffs claimed personal injuries to M.W. and loss of parental consortium damages. Defendant denied these assertions. Plaintiff M.W. and his parents sued defendant in King County Superior Court and Defendant removed the case to this Court on the basis of diversity. Dkt. 8-1 (Redacted Amended Complaint); Dkt. 8 (Redacted Notice of Removal).

ORDER APPROVING MINOR SETTLEMENT - 4

Plaintiffs claim that the alleged injury, which consisted of one or two blows to M.W.'s head from one or two shopping carts, resulted in the primary complaint that M.W. suffered headaches. However, medical evidence linking the blow or blows to headaches or any other condition was debatable due to other potential medical causes. After reviewing photos of the shopping cart, school and medical records, and the depositions of M.W.'s mother and father, defense expert Lauren L. Plawner, M.D., Board Certified Neurologist, concluded that the medical evidence did not support a probable medical causal relation between the alleged blows and the headaches or other conditions. Dkt. 49, Exhibit 1 ("The Plawner Report"). Dr. Plawner identified the primary alternate cause of M.W.'s headaches as his diagnosis of sagittal craniosynostosis. This is premature fusion of the sagittal suture that runs from the front to the back at the top of the skull, which forces the head to grow long and narrow, can increase pressure to the brain, and can cause headaches.

Attorney Luhr also reviewed the medical evidence, depositions, and the Plawner Report. According to his review, M.W.'s medical record indicates that his doctors share the working hypothesis that craniosynostosis was the probable cause of M.W.'s headaches, and none of M.W.'s physicians stated the opinion that the shopping cart blow caused headaches beyond the immediate time of the incident. Dkt. 50, Luhrs Decl., ¶ 5; and Dkt. 49, Exhibit 8 (2/3/17 clinic note from Seattle Children's Hospital in which M.W.'s doctor links pressure from craniosynostosis as the likely cause of M.W.'s headaches).

A July 26, 2015 CT Scan of M.W. was negative for brain injury, but showed maxillary and ethmoid sinusitis, which provides yet another medical explanation for M.W.'s headaches, since both types of sinusitis are associated with headaches. Dkt. 50, Luhrs Decl., ¶ 6 (citing https://www.healthline.com/health/acute-sinusitis, re maxillary sinusitis symptoms including

headimg, and https://www.healthline.com/health/acute-sinusitis re ethmoid sinusitis symptoms including headaches).

Independent Counsel concluded that M.W. has potential legal claims for personal injury as the incident occurred in a Safeway parking lot and was caused by a Safeway employee. Dkt. 59, ¶ 6. Thus, M.W. may potentially recover damages for his pain and suffering, his mother may potentially recover damages for emotional distress, and both his parents may potentially recover for loss of consortium. *Id.* However, Independent Counsel also concludes it is unlikely Safeway would be found liable for M.W.'s continuing symptoms. Review of M.W.'s medical records confirms M.W. has sagittal synostosis, a condition that pre-dates the accident, results from premature fusion of the skull, and has not been treated by surgery. M.W.'s brother also has sagittal synostosis and suffers from headaches. Dkt. 59 at 4-5 (discussion of incident, potential legal claims, injuries, and medical records). Further, because the incident occurred around 10:00 p.m., when M.W. and his four siblings were outside their mother's care while she loaded bags of groceries, Independent Counsel notes that Safeway could plausibly argue that any recovery for M.W.'s injuries should be reduced by comparative fault. *Id.*

Attorney Luhrs determined that a substantial investment would be required to secure supporting medical testimony, and that such an investment would not necessarily produce a convincing response to Dr. Plawner's opinion. Dkt. 50, Luhrs Decl., ¶ 7. Based on the evaluation of their counsel, Plaintiffs opted to settle for what amounted to a nuisance amount of $12,000.00, subject to court approval of minor settlement. Id., ¶ 8. Dkt. 51, Declaration of Haja Sillah, ¶ 3; Dkt. 49, Exhibit 2 (Settlement Agreement). The investigation of Independent Counsel recommends approval of the $12,000.00 proposed settlement amount based on an research of cases with similar evidence of causality and damages, which have comparable damages awards.

Dkt. 59, ¶ 11 (citing *Hickok-Knight v. Wal-Mart Stores, Inc.*, 168 Wn. App. 1032 (2012) ($6,433.35 in damages where shopping cart ran over Plaintiff's foot and caused a bruise) (unpublished); *Hutson v. Rehrig Int'l, Inc.*, 119 Wn. App. 332, 80 P.3d 615 (2003) ($15,000 in damages for shopping cart injury)).

Haja Sillah is authorized to speak for her husband Dembo Waggeh, who is currently working on a fishing boat in Alaska, and for M.W., who is now seven years old. Dkt. 51, Sillah Decl., ¶ 2. Ms. Sillah cannot read English, but understands English if the person speaking takes the time to explain, something she says Attorney Luhrs did when he read the settlement agreement and answered her questions regarding the settlement agreement. *Id*. All the referenced exhibits were read to her in English and in Soninke when needed, by Souleymane Camara, who also explained anything she did not understand. *Id*., ¶ 8.

At the time of the settlement agreement, Ms. Sillah and her husband consented to the placement of all funds, after deduction of fees and costs and the payment to Molina, into a blocked account for M.W. They agreed to do this because "this case was always for M.W. and also because Safeway counsel indicated Safeway placed no value" on the parents' claims. *Id*. Ms. Sillah affirmatively states that she and her husband Dembo relinquish all of their claims and agree that funds payable to M.W. shall be placed into a blocked account payable only to M.W. after he reaches 18. Dkt. 51, Sillah Decl., ¶ 6. Ms. Sillah is also aware that while she or her husband could petition the Court to withdraw funds for an urgent necessity for M.W., it would be very rare that such a request would be granted. *Id*. Independent Counsel recommends that any order directing funds into a blocked account should recite that the funds are payable upon further order of the Court or to the affected person at his age of majority. In addition, to preserve M.W. and his family's eligibility for means-tested benefits, Independent Counsel recommends

Plaintiff's counsel should ensure that the settlement funds are not reasonably available to either M.W. or his parents, until M.W. reaches 18 years of age. Dkt. 59, ¶ 13.

Attorney Luhr's representation of Plaintiffs has been under a contingent fee agreement providing for a fee of 1/3 of recovery and reimbursement of his litigation expenses. See Dkt. 49, Exhibit 3 (Fee Agreement). While not spelled out, counsel takes a fee from Plaintiffs only on any recovery to Plaintiffs, not on recovery to subrogated interests. Dkt. 50, Luhrs Decl., ¶ 10. In this case, Attorney Luhrs' 1/3 fee is on the gross recovery minus the payment to subrogated interests, after which expenses are reimbursed. Subrogated interests have also agreed to pay and are arguably legally obligated to pay a 1/3 fee and ratable share of litigation expenses. *Id.* Independent Counsel finds that the attorney fees and costs in this matter are documented and appear reasonable. Dkt. 59, ¶ 12.

Molina Health Care of WA has an arguable subrogation/reimbursement claim for medical expenses paid for treatment of M.W. Attorney Luhrs negotiated with Equian, the representative of Molina, a reimbursement figure of $667.58 gross and $296 net after deduction of fees and costs. Dkt. 50, Luhrs Decl., ¶ 13; Dkt. 49 (Equian letters of 7/11/19 (with bill) and 7/19/19). Independent Counsel believes this is a reasonable negotiated settlement amount and makes no recommendation for retention in an attorney's trust account. Dkt. 59 at ¶ 8.

<u>CONCLUSION</u>

Based on the foregoing, the Court finds that the proposed settlement amount and disbursements stipulated to by the parties and reviewed by Independent Counsel are reasonable and in the best interests of M.W. Accordingly, it is hereby **ORDERED**:

(1)      The Stipulated and Supplemental Stipulated Motions for Approval of Minor Settlement (Dkts. 49 and 60) are **GRANTED**;

ORDER APPROVING MINOR SETTLEMENT - 8

(2)     Plaintiffs Haja Sillah and Dembo Waggeh shall execute a release of claims against Defendant on behalf of themselves and their minor son M.W., in exchange for Defendant's settlement payment of $12,000.00, which shall be placed in the trust account of Attorney Luhrs.

(3)     The following disbursements from the $12,000.00 settlement payment deposited into Attorney Luhrs' trust account, are approved:

(a)     $4,000.00 to Attorney Luhrs' business account for the payment of attorney's fee;

(b)     $2,679.23 to Attorney Luhrs' business account for the payment of litigation expenses;

(c)     $296.00 to Molina Health Plan of WA through their representative Equian, in full satisfaction of medical expenses paid for the medical care and treatment of M.W.;

(d)     $5,024.77 to a blocked account with interest for the benefit of MW, which is the amount remaining after the above listed disbursements, payable only to M.W. after his 18th birthday or on further Order of this Court.

DATED this 19th day of September, 2019.

_____
BRIAN A. TSUCHIDA
Chief United States Magistrate Judge